—————o—————

No. 4202.

(Court of Appeal, Parish of Orleans.)

## JOHN SHANNON vs. NEW ORLEANS RAILWAY AND LIGHT COMPANY.

This is an action for personal injury in which questions of fact only are involved, and these are resolved in favor of plaintiff.

Appeal from Civil District Court, Division "D."

A. Romain, for Plaintiff and Appellee.

Dart & Kernan, for Defendant & Appellant.

ESTOPINAL, J.   From a judgment awarding five hundred dollars ($500.00) to plaintiff for injuries sustained while attempting to board a car, the defendant company prosecutes this appeal.   The pleadings recite that on November 8th, 1905, at about 6:30 p. m., plaintiff hailed a car of the Tulane Belt line at the corner of Hagan and Tulane Avenue, that the  car stopped, and that when plaintiff caught the hand rail attached to the body of the car and stepped upon the first ste pthereof, it was suddenly and violently started before he   (plaintiff), could reach the platform of the car, and that in consequence of said sudden and violent starting of the car he was thrown off the step of the car, and still retaining his hold on the handrail, was dragged for a distance of nearly half a square from which he suffered painful and serious injuries, causing his confinement in bed and indoors for some time, the injuries consisting of a serious strain and contusion of the right shoulder and right side and also of the right leg, as well as serious and painful lacerations of the face and right side of body.   The defendant company tenders the general issue and also avers that the injury complained of, was owing to plaintiff's negligence.   The evidence discloses in the first place that, the particular car on which the accident complained of occurred, was a few minutes late, and the defendant's employees admit that when a car is late, they endeavor to make up the time by running faster, which we take to mean not only the actual running, but also moving or starting of the car after a stop with the least possible delay.   Plaintiff testifies that he was standing at the precise place at the corner of Hagan Avenue and Tulane Avenue, where the car usually stops to take on and put off passengers.   In this he is corroborated and sustained by J. H. Holmes, who stood across the street and was observing plaintiff and the approaching car, and also by the motorneer, Knight, whose testimony alone indicates absence of care and prudence on the part  of defendant.   In reply to the question as to where Shannon was standing and as to how far was the car when he saw Shannon standing there, he said substantially that Shannon was standing just where the car usually stopped, ad that he saw him standing there when he was 150 feet away.   He explains that Shannon

was not standing close up to the track, but was out where the wagons pass, but opposite the stopping place of the car. The record discloses and there is but a narrow margi nseparating the track from the wagon road, in fact so narrow, that a person awaiting a car could not stand thereon and permit a car to pass, but must stand out in the wagon road. Shannon (plaintiff) says he hailed the car, the Motorneer, Knight, denies this, and here we find the only contradiction between these two.

Shannon says that when two passengers disembarked from the car after it had come to a full stop, he caught hold of the hand-rail and attempted to board the car, when its sudden and violent start threw him. In this he is corroborated by Holmes, who says he was standing about 50 feet distance from the spot when the car stopped, and that he saw Shannon get hold of the handle of the car to get on the car as the passengers were getting off, and the conductor gave the bell and the car started off. He testifies that he had heard *the bell and that he saw the conductor on the insida of the car at the time.* Testimony page 32.

When again questioned as to whether the conductor was inside the car at the time that he gave the signal to start, Holmes pertinently says: "I did see him on the inside of the car; that is why he didn't see Mr. Shannon when he fell at first."

All the witnesses, both for plaintiff and defendant, say that they saw Shannon standing at the corner, all except Barthe, the conductor, who at no time saw him even though he claims to have been standing on the platform of his car. He did not see Shannon standing on the corner and did not see Shannon attempt to board the car. Clearly he must have been temporarily deprived of his sight or, this is the milk in the cocoanut, he was standing inside of the car, his hand on the bell rope ready to give the signal the moment the disembarking passenger's heel had left the step, unmindful and indifferent of the fate that awaited the person who attempted to board his already late car.

By his own, and the testimony of two disinterested witnesses as well as that of the motorman, plaintiff has established proof of every material allegation of his petition. He has shown that he offered himself as a passenger; that the car stopped;

that he attempted to board it; that before he could reach a safe point on the platform of the car, it was sent on its way by the defendant's conductor, who was inside of the car, did not see him, and was grossly negligent in the performance of his duty.

The defendant, by setting up a special defense, that the accident was owing to the negligence and carelessness of plaintiff, has imposed upon itself a burden which it has signally failed to bear. The testimony of the conductor, relied upon by the defendant to sustain this special defense is absolutely discredited by the testimony of all the other witnesses. Barthe claims that Shannon ran after the car after missing the handle, and then succeeded in catching the vestibule hand-rail and was dragged some distance before the car could be stopped. He is alone in that presposterous story. Even Prescott, perhaps the strongest witness for the defense, who was a passenger on the car and standing on the platform of the car at the time of the accident, fails to say anything in his testimony that can be said to bolster Barthe's testimony in any material particular. Questioned repeatedly by counsel for both sides as to whether the *car was at a stop or moving* when Shannon attempted to board it by grabbing the handle, this witness as often replied that he was not sure; did not know. Testimony p. 5.

Barthe testified that he called loudly to Shannon to desist from his effort to catch the car, but not one single witness on either side can recall that he did any "hollering."

Defendant having specially pleaded contributory negligence, it was incumbent upon it to establish this defense by a preponderance of evidence. Buchener vs. City of New Orleans, 112 La. 600.

The doctors who testified, one in the employ of the company, and the other plaintiff's family physician, both agree that the injuries were varied, serious and painful, and incapacitated plaintiff from work for several months.

We do not, under the circumstances, feel called upon to disturb the finding of the Court a quo which appears to us to be eminently proper.

The judgment is affirmed.